## James L. Middleton et al., Appellants, v. Herschel D. Holstlaw et al., Appellees.

ACCOUNTING—*when should be awarded. Held*, that the contract in question in this case created a trust upon the part of the defendants and that the interest of the *cestui que* was assignable, and that such interest having been assigned for a sufficient consideration an accounting should be awarded.

Bill in chancery. Appeal from the Circuit Court of Marion county; the HON. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 21, 1912.

NOLEMAN & SMITH and W. F. BUNDY, for appellants.

HOLT & WILSON and D. D. HAYNIE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal by James L. Middleton and Jessie Middleton, from a decree dismissing for want of equity a bill in chancery, filed by them against appellees, for an accounting. The bill set out the contract in full as follows:

"Salem, Ill., Jan. 30th, 1907.

"Herschel D. Holstlaw, Walter C. Irwin, and James L. Middleton have this day purchased in full partnership the farm known as the Kent place in Sandoval, Ill., together with some personal property on said farm for $8000.00 for convenience the deed is made to H. D. Holstlaw and Walter C. Irwin.

All of the proceeds of whatever character are to be applied to the liquidation of the original cost until such amount is paid in full. After the payment of a certain mortgage for $2000.00 held by the Henry Kurth estate at Centralia, then one-third of the amount of proceeds from farm or other sales are to be credited on a certain note secured by mortgage given by Jessie L. and J. L. Middleton to H. D. Holstlaw and W. C. Irwin for $2,-000.00 to secure to said H. D. Holstlaw & W. C. Irwin the amount of J. L. Middleton's part of the original purchase price of the above Kent Farm. Whenever the full amount of purchase price shall have been realized from any source in connection with sales etc., then the mortgage given by said Jessie L. and J. L. Middle-ton shall be released and James L. Middleton shall be given proper evidence of having an undivided one third (1-3) interest in any remaining holdings of said farm, etc. Description of Land N. ½ S. E. and S. E. of S. E., Sec. 18, T. 2 N., R. 1 E., Marion Co., Ill.

It is understood the 1-3 of the proceeds are to be credited to J. L. Middleton after Kurth note is paid from proceeds of farm.

J. L. Middleton<br>
H. D. Holstlaw (Seal)<br>
W. C. Irwin  (Seal)."

It then averred that on the date of said contract it was assigned by said James L. Middleton to Jessie L. Middleton; that under the contract said Kent farm and certain personal property thereon, was purchased for the sum of $8000 and the title taken in the name of appellees, Holstlaw and Irwin; that on the day of the date of the contract, appellants executed a note for $2000 secured by mortgage on certain real estate in the

city of Salem, Illinois, belonging to appellant, Jessie L. Middleton, and certain other real estate in the village of Sandoval, Illinois, belonging to appellant, James L. Middleton; that subsequently appellees conveyed said premises for the sum of $6000, reserving from said conveyance the coal, oil and gas rights; that they have received from the chattel property on said premises, for rent of the farm, for hay sold therefrom, for coal royalties and for bonus on the oil and gas lease, a total of $11,544; that after the payment of the Kurth mortgage and the note and mortgage of appellees for $2000, there was a large amount due appellants under the agreement; that appellees have refused to account to appellant, Jessie L. Middleton, for any sums received by them from the sale of the property and still hold appellants' note and mortgage for $2000 and have otherwise failed to comply with the terms of said instrument in writing.

The bill asks for an accounting from appellees for all moneys received and paid out by them under said instrument in writing; that said note and mortgage of appellants be surrendered and released of record; that they give proper evidence that appellant, Jessie L. Middleton, has an undivided one-third in the remaining holdings of said premises, or the proceeds thereof, and that they be decreed to pay over to her any and all sums of money found due her upon an accounting and that appellants may have general and equitable relief.

Appellees answered admitting they signed the articles of agreement mentioned in the bill but denying that they were ever signed by the appellant, James L. Middleton. They admit the purchase of the Kent farm and that the deed of conveyance was made to them as set forth in the bill, but deny generally the remaining material allegations of the bill. The answer also averred that appellees had repeatedly offered to surrender the note and mortgage of appellants if the latter would

return the unsigned article of agreement, but that appellants have wholly failed to return the same.

From the proofs in the case the facts appear to be about as follows: Prior to January 3, 1907, James L. Middleton, who was superintendent of the Sandoval Coal Mine in Marion county, Illinois, had an option on a farm of 120 acres in said county, known as the Kent farm, which, together with certain horses, cattle, hogs and other personal property located thereon, he had the right to purchase for the sum of $8000. These premises were in the vicinity of the oil fields being developed near Sandoval and a portion of them had a vein of underlying coal, which had not been disposed of. The place was subject to a mortgage of $2000 held by the estate of Henry Kurth, the option was about to expire and Middleton, not having funds to close the deal, presented the matter to appellees, who after investigation, furnished the $6000 necessary to consummate the purchase and took the title to the premises in their names. To secure a one-third interest in the venture, appellant, James L. Middleton, together with his daughter, appellant, Jessie L. Middleton, gave a mortgage to appellees for $2000 secured by real estate owned by them and at the same time an agreement was made between James L. Middleton and appellees, in the terms mentioned in the above contract. This agreement was reduced to writing and signed by appellees, but the copy introduced in evidence by appellants bore only the signatures under seal of appellees, and the latter claim that the agreement never was, as a matter of fact, signed by James L. Middleton. Middleton, however, testified that at the same time he received this contract, he signed and delivered a duplicate thereof to appellees. The denial by appellees on the trial of the receipt by them of a duplicate of the contract, was not very positive, but whether Middleton signed the agreement or not, does not appear to us to

be material. One copy was certainly signed by appellees and delivered to Middleton and he and his daughter made and delivered their mortgage therein provided for to appellees, who accepted the same. Both parties thereafter recognized and acted upon the agreement as though it was an existing obligation, executed by all of them, and under these circumstances appellees cannot rightfully deny their obligations under it. As an additional consideration for his interest in the property purchased, Middleton paid appellees $125, which he received as commissions for selling the farm. On the day of the date of the agreement, he assigned the same by endorsement on the back thereof in writing, to his daughter, Jessie L. Middleton. After the purchase of the property, appellees took possession of the same, selling the personal property and collecting the rents from the real estate.

Testimony on the part of appellees tended to show that when the note and mortgage of appellants came due, they went to James L. Middleton and asked payment of the same; that he told them he was unable to make payment and that they could take the property if they wanted to; that appellees replied they did not want his property; that thereupon an understanding was arrived at by which appellant, James L. Middleton, undertook to surrender up the contract and receive back appellants' note and mortgage. None of the papers were in fact exchanged and Middleton positively denies ever having had any conversation with appellees in regard to surrendering the contract and making the exchange.

In November, 1908, after appellees had sold personal property and received as rents something over $1000, they sold the farm for $6000, reserving the coal, oil and gas under the same. A few months later they entered into a contract with a mining company by which they disposed of the coal under eighty acres of the land,

for a royalty of two cents a ton on all coal mined. Under this contract appellants claim that appellees had received $814 prior to the time the bill was filed. They also leased the oil and gas underlying the premises, for which they received a cash bonus of $1400, and were to receive one-sixth of all the oil found on the premises, $150 for each gas well discovered and also a rental of $60 for each period of three months that the completion of an oil well was delayed under the lease. Under the latter provision it was claimed that appellees had received $360.

Appellees admit the sale of the top premises for $6000, the sale of the coal for the royalty above stated and the receipt of the bonus of $1400 for the oil and gas lease, but there is a difference between their figures and those stated to be correct by appellants, as to the other items of receipt. Appellees claim that appellants were not entitled to have any accounting from them or any interest in the coal royalties or the gas and oil lease, because the contract relied upon was never completed by the signature of James L. Middleton and because if it ever was a valid contract, it was afterwards abandoned by said Middleton.

We are of opinion that under the evidence in this case, and for the reasons above stated, the contract relied upon by appellant was binding upon appellees.

We are further of opinion that the contract or agreement created a trust on the part of appellees towards James L. Middleton and that his interest therein was one which could be assigned; that having assigned the same to his daughter, Jessie L. Middleton, for a sufficient consideration, he could not afterwards surrender the contract, even if the proof clearly showed that he agreed to do so, as it does not appear, nor is it claimed that Jessie L. Middleton, the real owner of the contract, knew of said claimed agreement of surrender or was in any way a party thereto. It follows that Jessie

L. Middleton was entitled to the relief prayed for by her in the bill, and the decree of the court below is accordingly reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*